THE STATE *v.* WILLIAM HOLLIDAY, one of the Overseers of
the Township of Lower Penn's Neck.

A mandamus will be granted against an overseer of the highway to com-
pel him to open, clear out and make a certain road within the limit and
division assigned to him by the township committee.

It will be allowed in those cases only, where there is no other *specific
legal* remedy.

*W. N. Jeffers* for the applicant, *Dayton* for the overseer.

The opinion of the court was delivered by

EWING, C. J. An application in this case is made for an
alternative mandamus to William Holliday, one of the over-

seers of the highways, of the township of Lower Penn's
Neck, in the county of Salem, to open, clear out and make a
certain road in that township within the limit and division
assigned to him by the township committee.

The issuing of the writ is resisted, because the applicants
have another remedy; because this writ is never used to
compel obedience to an order of another court or officer;
and because it may not be directed to so an inferior an
officer.

1. The learned *Judge Buller,* in the case of *The King* v.
*The Bishop of Chester,* 1 *D. and E.* 404, says that in the
ancient cases, the grounds on which the court of King's
Bench granted or refused a mandamus are not explicitly
stated, but during the time *Lord Mansfield* presided there,
he took great pains to state particularly the grounds on
which the court would either grant or refuse the writ, and
that he had always said the court would not interpose by
granting a mandamus unless the party making the applica-
tion had no other specific legal remedy. " It must," says
*Judge Buller,* " be a legal remedy and a specific remedy;"
and he adds that the court has made an exception to the
rule where the remedy is obsolete. *Lord Mansfield* himself
in the case of *The King* v. *Barker and others,* 3 *Burr.*
1,274, speaks thus : " The original nature of the writ and
the end for which it was framed, directed upon what occa-
sions it should be used. It was introduced to prevent
disorder from a failure of police and defect of justice.
Therefore it ought to be used upon all occasions where *the
law* has established no specific remedy and where in justice
and good government there ought to be one." In *The King*
v. *Askew,* 4 *Burr.* 2,188, he says, " where a party who has
a right has no other specific legal remedy, the court will
assist him by issuing this writ. So in *Rex* v. *Windham,*
*Cowp.* 309, and in *Rex* v. *The Commissioners of the land
tax,* 1 *D. and E.* 148. The same rule is recognized in *Rex*
v. *Canterbury,* 8 *East.* 219, *Rex* v. *Canterbury and London,*

15 *East.* 135; and in the case of *Marbury* v. *Madison, in the Supreme Court of the U. S.,* 1 *Cranch.* 196, *Chief Justice Marshal* says: "The officer to whom it is to be directed, must be one to whom on legal principles such writ may be directed and the person applying for it must be without any other specific and legal remedy."

The remedy then, the right of resort to which shall deny the use of the writ of mandamus, must be a *legal* remedy. *Buller* says, *The King* v. *Stafford,* 3 *D. and E.* 551, a remedy in equity is no answer to the application, for when the court refuse to grant a mandamus because there is another specific remedy, they mean only a specific remedy *at law.* The remedy must also be *specific,* by which I understand a remedy framed to effect directly the desired end. A mandamus has been refused where a *quare impedit* would lie, *The King* v. *The Bishop of Chester,* 1 *D. and E.* 396. Judgment for the plaintiff in *quare impedit* is to recover the presentation and if the church be full by institution of any clerk, to remove him, unless filled *pendente lite* by lapse to the ordinary he not being a party to the suit; and if the church remains still void at the end of the suit, then whichever party the presentation is found to belong to has a writ directed to the Bishop to admit and institute his clerk, 3 *Bl. Com.* 249. A mandamus was also refused, *Rex* v. *Mayor of Colchester,* 2 *D. and E.* 259, because there was another remedy by information in nature of a *quo warranto.* In such case if the defendant be convicted, judgment of ouster as well as a fine is given against him, 3 *Bl. Com.* 264. The cases of *The King* v. *The Bank of England,* *Doug.* 524, *and Shipley* v. *The Mechanics' Bank,* 10 *John.* 484, are not inconsistent with the explanation I have given. In both, applications for mandamus to compel the transfer of bank shares were refused, for by action against the bank a recovery of the value of the shares might be had, and the purchase of other shares thereby enabled. Complete satisfaction, entirely

equivalent to specific relief, might thus be obtained, as no possible difference could exist between the shares sought and the shares to be purchased.    Let us now examine whether there is, beside the mandamus, *a legal and specific* method of compelling the overseer to open and make the road in question.    By the 18th section of the act concerning roads, *Rev. Laws,* 622, an overseer may be presented by the Grand Jury or informed against by the Attorney General for not opening and clearing out an highway and on conviction may be fined.    By the 37th section, the overseer on conviction, before a magistrate, of neglect or refusal to perform any of the duties enjoined on him by the said act, may be subjected to a penalty not exceeding twenty dollars nor under five dollars, with costs.    But it is manifest that the penalty may be paid or the fine satisfied, and yet the road may not be opened and cleared out nor the public be enabled to enjoy the use of it.    These remedies then cannot be denominated specific.    It is no objection to say that the mandamus may be disobeyed and the court can then only fine and imprison him to whom it is directed.    For the law presumes the officer will yield obedience to the writ unless he shew sufficient cause on which the court, not he, is to decide.

Nor do the cases in the books prove that a mandamus will be refused where an indictment will lie.    *The King* v. *Bristow,* 6 *D. and E.* 168, cited at the bar does not sustain the position.    The writ was there refused because in the language of *Lord Kenyon,* " it would be descending too low to grant a mandamus"—and therefore the prosecutors were left to the ordinary remedy by indictment, but not because there was such a remedy.    If however, the case did tend to the support of the position, it has been shaken if not over-ruled by that of *The King* against *The Commissioners of Dean Inclosure,* 2 *Maule and Selwyn,* 80.    An application was made for a mandamus to the commissioners under an act of parliament for inclosing lands in the parish of Dean, in the county of Cumberland, commanding them to set out

as a public road, a certain road particularly described pur-. suant to an order of the sessions made in that behalf. One of the grounds on which the application was resisted was, that another remedy was open to the party by indictment for disobedience of the order of sessions. *Lord Ellenborough* said : Upon the objection of there being another remedy in this case, I cannot help thinking that what has been observed by the counsel in support of the rule is extremely material, and that an indictment would not afford that convenient mode of remedy which might be maintained by a mandamus. In the case of *The Commonwealth* v. *Johnson*, 2 *Binney* 261, on an application for a mandamus to the supervisors of the roads of a township to compel them to pay an order drawn upon them by justices of the peace, under the direction of an act of the Legislature of Pennsylvania, *Tilghman, Chief Justice*, in delivering the opinion of the court, says, " The point which required most consideration was, whether the case was of such a nature as called for a mandamus, and we think that it is, because the supervisors are public officers, directed by the act of assembly to pay such orders as are legally drawn by the justices, and because the surveyors' have no other specific remedy. It is said the supervisors may be indicted for neglect of duty. But if they were indicted and convicted, the orders might still be unpaid." It has also been held, that a mandamus lies to oblige an officer to do his duty, although there is a penalty for his neglect, *Rex* v. *Everet, Cases temp. Hardwicke* 261, 5 *Com. dig. tit. Mand. A.* 24.

2. It is said this writ ought never to be used to compel obedience to the order of another court or officer. But without examining the correctness of this position, it suffices to say it cannot apply to the case before us. The duty of the overseer to open, clear, out and make the road, is imposed, not by an order of the township committee, but by an act of the Legislature. The committee assign to each overseer his limit or division of the highways ; and the act,

not an order from the committee, enjoins him to open, clear out, amend or repair as the exigency may require. No analogy exists to the case of *The King* v. *Bristow*. The duty of the officer here is imposed by the statute and by that alone.

3. The last objection arises from the grade of the officer to whom it is sought. But it has no foundation. In our system of government and jurisprudence, where circumstances, otherwise proper, exist, we have no officer so exalted as to be beyond its reach, none so low as to be beneath its notice. *Chief Justice Marshall* says, (*Marbury* v. *Madison,* 1 *Cranch* 170,) "It is not by the office of the person to whom the writ is directed but by the nature of the thing to be done, that the propriety or impropriety of issuing a mandamus is to be determined." Nor would the objection, as it seems, prevail in England; for a mandamus was issued to justices of the peace to make a rate to reimburse money expended by a surveyor of the highways, *Hassel's case,* 1 *Str.* 211; to swear in a director of a chartered company, the Amicable Assurance, 1 *Str.* 696; to the old overseers of the poor to deliver the books of the poor's rates to the new overseer, *Rex* v. *Clapham,* 1 *Wils.* 305; to the trustees of a dissenting meeting house to admit a person duly elected to the use of the pulpit as pastor, minister or preacher, 3 *Burr.* 1264. By the Supreme Court of the State of New York, a mandamus has been issued; to a town clerk to record the survey of a public highway, laid out by commissioners of highways, 7 *John.* 549; to the supervisors of a county to audit and allow to a constable his account for removing paupers from one town to others, 12 *John.* 414; to the clerk of a county to record a deed, 14 *John.* 325; to commissioners of highways to open for public use an highway laid out by the Judges of the court of common pleas on an appeal, 16 *John.* 61; to commissioners of highways to open a road described in the writ and which had been laid out, 1 *Cowen* 589. By this court a mandamus was

17

issued to the township committee of the township of Lower
Penn's Neck, to assign to one of the overseers of the high-
ways the very road now in question and it would, in my
opinion, be extremely fastidious to say the overseer was
himself beneath the dignity of the writ.

Let an alternative mandamus as applied for be issued.